RICHARD M. FAULKNER & a., *Ap'ts*

*v.*

WINTHROP FAULKNER, *Trustee, & a.*

ELLEN FAULKNER & a., *Ap'ts v.* SAME.

JOHN C. FAULKNER & a., *Ap'ts v.* SAME.

WILLIAM E. FAULKNER & a., *Ap'ts v.* SAME.

*Roy M. Picard* (by brief and orally), for John C. Faulkner *& a.* and William E. Faulkner, Jr. *& a.*, appellants.

*McLane, Davis & Carleton* for William E. Faulkner, Jr. *& a.*, appellants.

*Wyman, Starr, Booth, Wadleigh & Langdell* (*Mr. Eliot U. Wyman* orally), for Ellen Faulkner *& a.*, appellants.

*William H. Watson* (by brief and orally), for Richard M. Faulkner & a., appellants.

*Philip H. Faulkner* for Winthrop Faulkner, trustee.

*Sulloway, Piper, Jones, Hollis & Godfrey* (*Mr. Piper* orally), for Charles S. Faulkner, executor and trustee *u/w* of Robert E. Faulkner.

JOHNSTON, J. The distribution of the trust fund at the decease of the last surviving child is determined by the provisions of the trust as set forth in the will. These may be expressed or reasonably implied. The children themselves of Charles S. Faulkner having deceased are eliminated as beneficiaries of this fund.

The will expressly provides that the trust fund shall be divided "so that the children of each deceased child or his or her devisee or heir may take the share of such deceased child as hereinbefore provided." The earlier language referred to confirms this statement that distribution is to be made among issue per stirpes, if such, otherwise among appointees by will, or finally among heirs as defined in the will, if neither issue nor appointees by will. This earlier paragraph provided that the heir or heirs of a deceased child without issue should be the brothers and sisters. In view of the provision in the same sentence that the share of a deceased child is to be paid to its lawful issue, it is reasonably clear that the testator meant by heir or heirs issue of a deceased brother or sister as well as living brothers and sisters. The provisions of the will indicate equality of treatment among the children. It is improbable that the testator intended that any grandchildren should be preferred by reason of survivorship of their parent. No contention is made that the word "heir" has other than one of two meanings: living brothers and sisters, or secondly, brothers and sisters and the issue of those deceased. It could not mean the former and would have to mean the latter if the word "heir" as used in the provision for the distribution of the present fund on the decease of the last surviving child is to have any effective meaning at all. This construction of the will accords with the well-known legal principles of distribution in the case of deceased brothers and sisters, which principles permitted taking by representation. See G. S., *c.* 184, *s.* 1, *par.* III (R. L., *c.* 360, *s.* 1, *par.* III).

The four groups of children of Herbert K., Frederick A., John C., and William E. Faulkner are clearly entitled to share equally per

stirpes in the present fund.    They take not only what is made available by the deaths of the parents respectively alone but also any increase due to the decease of an uncle or aunt in addition without issue and without appointees by will.

Mary J. Faulkner died intestate without issue.    According to her father's will, her representatives are her "heirs" as defined and are the same four groups of children.    Any share that may be described as hers simply goes to augment the shares of said grandchildren per stirpes.    No one takes by virtue of inheritance from Mary J. Faulkner but only by force of the terms of the trust created by the Charles S. Faulkner will.    That trust determines the beneficiaries of the present fund on the death of the last surviving child.    No one representing Mary J. Faulkner takes except as the shares of others are increased due to her decease intestate without issue.

Similarly any so-called share of Robert E. Faulkner enlarges the shares of the above-stated four groups of grandchildren unless it can be said that he exercised the power of appointment given in the quoted parts of his father's will.    Robert died without issue but testate.    His will contains no reference to the power of appointment either expressly or by implication, but does bequeath and devise his "remaining estate."    The question to be decided is whether a general devise or bequest will operate to exercise a power of appointment without evidence of intention to that effect.

In *Burleigh* v. *Clough*, 52 N. H. 267, 280, it was held that a power would not be executed unless there is a reference to it or the subject of it in the will or unless the will would be inoperative without the aid of the power.    *Bell* v. *Twilight*, 22 N. H. 500, was cited in support of this principle.    In *Kimball* v. *Society*, 65 N. H. 139, 150, it was decided that upon all the competent evidence it was more probable than otherwise that the testatrix intended to exercise the power given her.

It is true that in *Emery* v. *Haven*, 67 N. H. 503, 505, a statement was made that Massachusetts had adopted a rule that a general residuary devise would operate as an execution of a power to dispose of property by will unless there is evidence to show that such was not the testator's intention.    It was further said that this rule had been established by statute in England and in New York.    The power was held to have been exercised.    So it has been stated that the majority rule followed in *Burleigh* v. *Clough, supra,* has been overruled and the so-called Massachusetts rule adopted in this state. 41 Am. Jur. 838, *n.* 10; 841, *n.* 3.    See also, 3 Tiffany, Real Property

(3d *ed.*), *s.* 700, *n.* 46.    While the facts of the *Emery* case are similar to those of the present one, the court based its decision upon an ascertainment that the testatrix did intend that the power be executed.    It denounced arbitrary rules of construction.    On page 505 the court said: "She intended to dispose of all property (not disposed of by previous provisions of the will) over which she had the power of disposition, whether by reason of ownership or by reason of authority from the owner, and used language sufficiently broad to indicate such intention."    However, we believe that the facts enumerated in that case are insufficient to indicate that the testatrix through a mistake of law considered the power of appointment to be "practical ownership."

In *Weston* v. *Society*, 77 N. H. 576, the power given was limited in its purposes; but on page 579, the court said with regard to the author of the *Emery* opinion, "probably not meaning in the latter [*Emery*] case . . . to alter the decision in *Kimball* v. *Society, supra.*" In the later transfer of the *Weston* case, 79 N. H. 245, 249, it was reaffirmed that the question of exercise of power is one of intention and not of an arbitrary rule of construction.    "This question has been tried and upon sufficient evidence it has been found it was not intended to take the property out of Mrs. Brown's estate."

*Lord* v. *Roberts*, 84 N. H. 517, 523, is not a case of a testamentary residuary clause but one involving an alleged execution by mortgage deed.    Accordingly little if any, light is cast upon the effect of such a clause.    However, the test for determining the exercise of a power is given in quoted language that is now found in 41 Am. Jur. 837. "If from the tenor and effect of the deed or will by which title is conveyed the intent to execute the power is inferable, there is a valid execution of the power."    Reference is also made to the *Kimball* case, *supra*, and to the first transfer of the *Weston* case, *supra*. This decision includes in the test not only the instrument but "other competent" evidence of the donee's intention.

The law concerning the exercise of a power of appointment has been stated as follows: "An intention to execute the power is not presumed, but must be shown, in the absence of statutory provision to the contrary, and however manifested, the intention must be apparent and clear so that the transaction is not fairly susceptible of any other interpretation."    3 Tiffany, Real Property (3d *ed.*), *s.* 699.    Another statement of the same principle is: "When the donee by his will makes a gift of the residue of his estate or otherwise manifests an intent to pass all his property, this of itself does not manifest

an intent to exercise any power." Restatement, Property, s. 343, (1). Again, "although there is some authority to the contrary in a few jurisdictions, it is generally held that where there is no reference in the will to the power or to the property which is the subject matter thereof, and the will is operative without the aid of the power, a general devise or bequest will not, in the absence of statute, operate as an execution of the power." 41 Am. Jur. 839.

Not only does the will of Robert E. Faulkner contain no reference to his power of appointment either directly or through description of the property that is the subject of the power, but also the record is silent as to any circumstances that would be evidence of an intention to exercise the power. Either he was satisfied with the provisions of his father's will in default of an exercise of the power or he forgot the right given him. In either event evidence of the intention required in this jurisdiction for the exercise of a power is lacking. The power that Robert had was not exercised. Any interest that might be described as his goes to augment the shares of the children of his brothers.

The children of Herbert K., Frederick A., John C. and William E. Faulkner per stirpes take the trust fund in equal shares, one-fourth to each group.

*Appeals sustained.*

MARBLE, C. J., took no part in the decision: the others concurred.